UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-212 |
| v. | : | |
| PAUL MEEDER | : | VIOLATION: |
| | : | 18 U.S.C. § 1341 (Mail Fraud) |
| Defendant. | : | |

**FILED SEP 11 2007**
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STATEMENT OF OFFENSE

The Carnegie Institution of Washington (hereinafter "CIW") is a non-profit scientific research organization that specializes in the physical and biological sciences. CIW is organized into six departments, including the Geophysical Laboratory (hereinafter "Laboratory") located at 5251 Broad Branch Road, N.W., Washington, D.C. The Laboratory is engaged in the basic research and advanced education of earth sciences. Since October 1998, the Director of the Laboratory has been Dr. Wesley Huntress.

From approximately 1993 until January, 2006, defendant **PAUL MEEDER** was employed by the Laboratory as the accounts payable manager. **MEEDER**'s job responsibilities included reviewing and reconciling the Laboratory's credit card account statements received monthly from Sam's Club. Some employees of the Laboratory were issued credit cards issued by Diners Club and Sam's Club to pay to for expenditures incurred in furtherance of the Laboratory's operations. After the Diners Club and Sam's Club credit card account statements were reviewed and inputted in the Laboratory's accounting system, payment checks were prepared by **MEEDER**. The payment checks were signed by one of the three authorized signers which included J.S., the Laboratory's Business Manager and **MEEDER**'s supervisor. The

1

payment checks were then mailed to Diners Club located in The Lakes, Nevada, and to Sam's Club in Carol Stream, Illinois.

MEEDER was issued a Diners Club and a Sam's Club credit card by the Laboratory. MEEDER was authorized to use the credit cards to pay to expenditures such as office supplies and equipment, gasoline for the Laboratory's vehicles, and travel to attend training classes or seminars.

From in or about May 1, 2002 through January 4, 2006, MEEDER used the Diners Club and Sam's Club credit cards issued to him by the Laboratory to pay for personal expenditures he incurred without the consent of CIW. For example, MEEDER used the Diners Club credit card to pay for items purchased at Exoticar Models, Sharper Image, AOL Internet service and Chef's Catalog. In addition, MEEDER used the Diners Club credit card to pay for vacation expenditures in Orlando, Florida; Honolulu and Kapolei, Hawaii; Las Vegas, Nevada; Nashville, Tennessee and Curacao, Aruba. MEEDER used the Diners Club credit card to pay for vacation expenditures such as Walt Disney World admission tickets and merchandise, a Royal Caribbean Cruise, and a Legend of the Seas cruise. MEEDER used the Diners Club and Sam's Club credit cards issued to him by the Laboratory to pay for unauthorized personal expenditures that totaled at least $109,000.

MEEDER was not authorized by CIW to incur these personal expenses on his behalf. MEEDER intentionally misused the CIW issued credit cards to defraud CIW of monies and of his honest services as a CIW employee. To carry out this scheme to defraud CIW, MEEDER caused the United States mails to be used by mailing payments from CIW in Washington, D.C. to businesses outside of Washington, D.C.

2

MEEDER prepared the general ledger entries to record the credit card expenditures in the proper account or category. MEEDER's general ledger entries were approved by J.S.. MEEDER, with the approval of J.S., recorded their personal credit card expenditures in an account known as the Advance account. The Advance account was supposed to be used to temporarily record personal expenditures incurred by employees of the Laboratory until the employee reimbursed the Laboratory for the expenditures.

When the Sam's Club and Diners Club monthly account statements arrived at the Carnegie Institute, J.S. would review them. J.S. would write on the face of the statement which of the CIW acounts individual charges were to be allocated to. MEEDER would perform the same task for the Sam's Club receipts and monthly statements. MEEDER would then physically input the account allocations into the Laboratory's accounting software. MEEDER's and J.S.'s personal credit card expenditures were processed in the same fashion and allocated to an account known as the Advance account. The Advance account was supposed to be used to temporarily record personal expenditures incurred by employees of the Laboratory until the employee reimbursed the Laboratory for expeditures.

On a yearly basis, and at the request of the Laboratory's outside auditor, J.S. and MEEDER would provide the detail that comprised the balances of the expense accounts, including the Advance account, to CIW for reconciliation.

On a monthly basis, Director Dr. Huntress was provided with a report that reflected the expenditures of each of the cost centers of the Laboratory. The balance of the Advance account was not included on this report because it was an overhead account.

3

## DEFENDANT'S ACCEPTANCE

    I have read every word of this Statement of Offense. Pursuant to Fed. R. Crim. P. 11 and 28 U.S.C. § 1746, after consulting with my attorney Thomas Buchanan, Esq., I agree and stipulate to this Statement of Offense, and admit and declare under penalties of perjury that the facts recited within this Statement of Offense are true and correct.

Date: 8/31/07

_____
Paul Meeder, Defendant

    I have discussed this Statement of Offense with my client, Paul Meeder. I concur with his decision to stipulate to this Statement of Offense.

Date: 8/31/07

_____
Thomas Buchanan, Esq.
Attorney for the Defendant

4